[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 2, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16588
Non-Argument Calendar

_____

BIA Nos. A79-471-230 & A79-471-231

JUNA SERAPHIN TOUZE,
JUDE SERAPHIN,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(August 2, 2007)**

Before BLACK, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Juna Seraphin Touze and her husband, Jude Seraphin, natives and citizens of Haiti, seek review of the Board of Immigration Appeals' (BIA's) order affirming the Immigration Judge's (IJ's) decision that she[1] failed to qualify for asylum or withholding of removal.[2] We address Touze's contentions on appeal in turn.

## I.

Touze, a radio journalist, contends the IJ and BIA[3] erred by basing an adverse credibility finding on the discrepancies between her applications and testimony regarding, among other things, whether her windshield was broken during a stone throwing incident at a demonstration she was covering, and the date on which Yvon Neptune (then a Haitian Senator–later Haiti's Prime Minister) called her radio show. In addition, she argues the IJ erred by finding she testified the demonstration happened in May 2000. She further asserts the IJ erred by finding no threats were made against her, pointing to the call she received at home

---

[1] For the sake of convenience, and in recognition of the fact that Seraphin did not make an independent application but, rather, relied on Touze's application for relief, this opinion will refer to Touze and her husband together simply as Touze.

[2] Touze does not challenge on appeal the denial of withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, *see* 8 C.F.R. § 208.16(c), and therefore that issue is abandoned, *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

[3] The BIA adopted and affirmed the IJ's decision, with additional analysis. Thus, we review both decisions. *See Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) ("We review only the [BIA]'s decision, except to the extent that it expressly adopts the IJ's opinion.").

2

after being followed. Finally, Touze contends the IJ erred by basing his adverse credibility finding on only minor inconsistencies.

"The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. §§ 208.13(a) (asylum), 208.16(b) (withholding of removal). The IJ must "determine credibility, and we [will] not substitute our judgment for that of the IJ with respect to credibility findings." *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005). Thus, we will defer to the IJ's credibility finding as we would any factual finding, unless the evidence compels us to do otherwise. *Id.* That said, "the IJ must offer specific, cogent reasons for an adverse credibility finding." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005).

The IJ and BIA made clear adverse credibility findings based on a number of inconsistencies in Touze's initial application, asylum interview, amended application, initial testimony, and follow-up testimony. Nevertheless, the IJ's finding that Touze testified the demonstration involving the stone throwing incident happened in May 2000 was incorrect. Rather, the record shows while she briefly testified it happened in January 2001, she eventually concluded it happened in March 2001. This was in accord with her asylum interview and her amended application (and she did not mention the demonstration in her initial application).

However, even removing this alleged inconsistency from consideration, there were still several discrepancies between her testimony and her prior statements. First, she stated in her amended application that Neptune called her in June 2000, but later repeatedly testified he called her in March 2001, the same day she was followed from her office. Second, in her initial application and follow-up testimony, Touze stated she was followed by two cars, but in her asylum interview, amended application, and initial testimony she described only one car. Finally, in her initial application she did not mention any specific incident at any demonstration. Then, in her asylum interview she stated that stones were thrown at her and broke her car's windshield. However, in her amended application she failed to mention that her windshield was broken. Then, when she testified, she stated that she recognized the stone throwers, and again stated that her windshield was broken.

With these inconsistencies as a basis, nothing in the record compels us to conclude the IJ and BIA's adverse credibility findings were incorrect. *See* 8 U.S.C. § 1252(b)(4)(B) ( "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

4

## II.

In addition to their adverse credibility findings, both the IJ and BIA also found that, even assuming Touze was credible, she failed to establish past persecution or a well-founded fear of future persecution, and failed to establish it was more likely than not that she would be persecuted in the future.

"An alien who arrives in or is present in the United States may apply for asylum, which the Attorney General has discretion to grant if the alien meets the INA's definition of a 'refugee.'" *Sepulveda*, 401 F.3d at 1230. A "refugee" is defined as:

> any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). A refugee seeking asylum "carries the burden of proving [her] statutory 'refugee' status and thereby establishing asylum eligibility." *Sepulveda*, 401 F.3d at 1230.

"To establish asylum eligibility based on political opinion . . . the alien must, with credible evidence, establish (1) *past persecution* on account of her political opinion . . ., or (2) a 'well-founded fear' that her political opinion . . .will cause *future persecution*." *Id.* at 1230-31 (emphasis added). Nevertheless, an alien need not demonstrate that she would, in the future, be singled out for persecution if she

5

can demonstrate, among other things, that "there is a pattern or practice . . . of persecution of a group of persons similarly situated" to her on the basis of a protected ground. 8 C.F.R. § 208.13(b)(2)(iii).

"[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . [m]ere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (quotations omitted). "Not all exceptional treatment is persecution." *Gonzalez v. Reno*, 212 F.3d 1338, 1355 (11th Cir. 2000).

Assuming, *arguendo*, that Touze did not waive the question of past persecution below, the events she describes as establishing persecution are: (1) the stones thrown at her and breaking the windshield on her car; (2) various threatening phone calls received at her radio station; (3) one specific call she received at her radio station from Neptune; (4) the men who followed her from her place of work following the call from Neptune; (5) the threatening call she received at home after evading the cars; and (6) the fact her house was burned after she fled the country.

As for the stone throwing, as the IJ noted, although she testified she recognized the leaders of the group, nothing in the evidence requires the

conclusion that Touze herself was targeted.[4]  Further, she was not harmed, and she

only testified that a colleague's *equipment* was destroyed.  Next, threats alone are

not enough to establish persecution.  *Sepulveda*, 401 F.3d at 1231.  Although it is

noteworthy that Neptune called her, he only expressed dissatisfaction with her

political views, to which Touze responded by inviting him onto her radio show.

As to the cars following her, she suffered no personal injury or property damage in

the incident, and she did not claim that the men were armed or did anything more

than follow her.  Finally, although pictures of her burned house were tendered, she

did not present any evidence, other than her own opinion, that it had been burned

because of her political opinion.  Thus, Touze failed to establish past persecution.

As for fear of future persecution, even assuming, *arguendo*, that she had a

subjectively genuine fear, she failed to establish it was objectively reasonable.

Specifically, the political organization she testified was the source of the threats

against her is now sharing power with the party she supported.[5]  While the

---

[4] Touze argues the IJ had to impermissibly speculate to reach a similar conclusion, but, as the Government notes, this was merely an inference permitted of a fact-finder.  *See United States v. Alvarez-Moreno*, 874 F.2d 1402, 1408 (11th Cir. 1989) ("[We] must also give deference to the fact finders reasonable inferences and credibility choices.").

[5] Touze argues the IJ's finding to this effect was error as she did not comply with the requirements of making such a finding at 8 C.F.R. § 208.13(b)(1)(i)(A).  However, that regulation applies to analyzing a change in circumstances used to rebut a presumption of a well-founded fear of persecution arising from past persecution.  *See* 8 C.F.R. § 208.13(b)(1)(i). There was no such presumption here, and the IJ merely noted the issue in her analysis of the question of the objective reasonableness of Touze's fear of future persecution.  Thus, this argument is meritless.

7

documentary evidence shows attacks on journalists continue, they also show these attacks are not limited to journalists of one political opinion. Further, she has been out of the country for six years now, and has not shown she was so well known as to attract persecution upon her return. *See id.* at 1232. Finally, she did not argue below, and has not argued on appeal she will be persecuted as part of a pattern and practice, and so this argument is waived. *See id.* at 1228 n.2. Thus, even assuming she is credible, she has failed to establish that she is eligible for asylum. *See id.* at 1230.

### III.

"Where an applicant is unable to meet the 'well-founded fear' standard for asylum, [s]he is generally precluded from qualifying for either asylum or withholding of [removal]." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1243 (quotations omitted). Given that she failed to meet the lower standard for asylum, Touze has also failed to satisfy the higher standard required for withholding of removal.

For these reasons, we deny Touze's petition for review.

**PETITION DENIED.**